UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

-----------------------------------------------------------

UNITED STATES OF AMERICA,

                    Plaintiff,

        -vs-                        Case No. 7:21-CR-135-M-1


BRANDON MCMILLAN,

                    Defendant.
-----------------------------------------------------------

PUBLIC TRANSCRIPT OF ARRAIGNMENT
DECEMBER 7, 2022

**(Pursuant to Standing Order 22-SO-1, portions of all
guilty plea and sentencing transcripts are restricted.)**

THE HONORABLE CHIEF JUDGE RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE


**A P P E A R A N C E S**


<u>On Behalf of the Government</u>

**ADAM F. HULBIG
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601**


<u>On Behalf of the Defendant</u>

**HAYES S. LUDLUM
Ludlum Law Firm
P.O. Box 711
Warsaw, North Carolina 28398**


Risa Kramer, RMR, CRR
Official Court Reporter
United States District Court
Wilmington, North Carolina

TRANSCRIPT OF PROCEEDINGS

(Proceedings commenced at 10:36 a.m.)

THE CLERK:  USA versus Brandon McMillan.

THE COURT:  Counsel, please state your appearance for the record.

MR. HULBIG:  Adam Hulbig for the government, Your Honor.

MR. LUDLUM:  Hayes Ludlum for the defendant, Your Honor.

THE COURT:  Mr. Ludlum, is your client prepared to enter his plea today?

MR. LUDLUM:  Yes, Your Honor.

THE COURT:  Good morning, Mr. McMillan.  If the clerk would please administer the oath.

THE CLERK:  Raise your right hand, left hand on the Bible.  Please state your name for the record.

THE DEFENDANT:  Brandon McMillan.

(The defendant was placed under oath.)

THE COURT:  Mr. McMillan, do you understand you're now under oath, and if you do not answer my questions truthfully, the United States may use your answers against you in another prosecution for perjury or for making false statements?

THE DEFENDANT:  Yes, sir.

THE COURT:  How old are you, sir?

THE DEFENDANT: 42.

THE COURT: How far did you go in school?

THE DEFENDANT: Ninth grade.

THE COURT: Do you speak and understand English?

THE DEFENDANT: Yes, sir.

THE COURT: Do you read and write in English?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any illness or condition that affects your ability to hear and understand these proceedings today?

THE DEFENDANT: No, sir.

THE COURT: Have you taken any drugs, medicine, pills, or drunk any alcohol within the last 24 hours?

THE DEFENDANT: No, sir.

THE COURT: Mr. Ludlum, do you have any doubt as to your client's competence to plead at this time?

MR. LUDLUM: No, Your Honor.

THE COURT: Mr. Hulbig, does the United States have any such doubt?

MR. HULBIG: We do not, Your Honor.

THE COURT: Based on this Court's questions

and the defendant's and counsel's answers, this Court finds that the defendant is competent to enter a plea today.

Mr. McMillan, you're here today for the purpose of entering a plea to the charges brought against you by the United States. Before accepting your plea of either guilty or not guilty, there are a number of things that I must tell you. This will include an explanation of your rights, the process that occurs between now and your sentencing hearing, and some information concerning sentencing itself. This process will take us a little time.

It's important that you fully understand my statements. If you do not understand me at any time, please say so. You may confer with your lawyer if you need anything explained to you at any time. Just raise your hand. We'll stop and make sure you understand everything that's happening, okay?

THE DEFENDANT: Yes, sir.

THE COURT: You may have a seat.

Mr. McMillan, you have the right to plead not guilty, or having already so pleaded, to persist in that plea.

You have the right to a jury trial in your case. At a trial, you have the right to be represented

by counsel, and if necessary, have the Court appoint counsel to represent you at trial and at every other stage of the proceedings. Whether you plead guilty or not guilty does not affect your right to counsel.

You have the right to confront and cross-examine witnesses, to be protected from compelled self-incrimination, to testify if you choose to do so, to present evidence, and to compel the attendance of witnesses on your behalf. The Court advises you that you waive or give up all of those trial-related rights if you plead guilty and the Court accepts your plea of guilty.

Please listen carefully to the following additional consequences that arise if you plead guilty and the Court accepts your guilty plea.

If you're convicted in federal court of a crime, whether by guilty plea or at a trial, a defendant who is not a U.S. citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Furthermore, a guilty plea may deprive you of certain valuable civil rights, such as the right to vote, the right to serve on a jury, the right to hold public office, and the right to possess any kind of firearm.

If you plead guilty, you'll have to waive your right not to incriminate yourself because the Court will ask you questions about what you did in order to ensure that you are guilty as charged, and you'll have to acknowledge your guilt.

If you plead guilty, the Court may impose the same punishment as if you had pleaded not guilty and been convicted by a jury.

If you're on probation, parole, or supervised release in another case in this or another court, by pleading guilty here, your probation or parole may be revoked, and you may be required to serve time in that case in addition to any sentence imposed upon you as a result of your guilty plea here.

Unless otherwise advised at sentencing, any fine imposed will bear interest.

You most likely will be given a term of supervised release in addition to any term of imprisonment. The term of supervised release will follow imprisonment and will be conditioned on your noncommission of another federal, state, or local crime, and such other conditions as may be appropriate. If you violate the conditions of supervised release, you may be subject to further imprisonment.

Additionally, regardless of the advisory

sentencing guidelines ultimately found to be appropriate, you may not withdraw a guilty plea tendered and conditionally accepted today.

I'm now gonna tell you about the process that occurs between now and sentencing.

These matters are set for sentencing at the March 7th, 2023, term of court here in Wilmington. The probation office will prepare a written presentence report to assist the Court in sentencing. You will be asked to give information for the presentence report, and your lawyer may be present with you. At the end of this hearing, your lawyer will speak with the probation officer present in the courtroom about arranging for your interview sometime today, or certainly within three business days.

After your interview, the probation office will prepare a presentence report. You and your lawyer will receive a copy of the presentence report. Please read it carefully because the information in it may have a significant impact on your case.

You have the right to file objections to the presentence report. In fact, within 15 days of receiving the presentence report, you and your lawyer must communicate in writing to the probation office stating any objections you may have to any information

contained in or omitted from the report. The Court will not consider any dispute which has not been the subject of such written communication. Further, the Court will consider and resolve only issues relevant to disputed sentencing factors previously stated in writing and additionally brought to its attention by you or your lawyer at the time of sentencing.

At sentencing, you should advise the Court orally if you have any objection to any matter contained in or omitted from the presentence report. Objections not stated by you or your lawyer will be deemed abandoned. Your failure to challenge any prior convictions before the imposition of your sentence will bar your contesting those convictions at a later date.

In sum, if you do not contest the facts set forth in the presentence report, then the Court may accept those facts as accurate and may rely on them in determining your sentence. At the sentencing hearing, the Court will rule on any objections to the presentence report raised by you or the government. Between now and the sentencing hearing, you will, of course, continue to have access to consult with your lawyer to prepare for sentencing. If you or your lawyer would like the Court to consider any sentencing memorandum concerning your case, it must be filed not later than seven days before

your sentencing hearing. The same deadline applies to other written materials submitted on your behalf, such as character letters. I will tell you that this Court takes very seriously any character letters submitted on your behalf.

I'll now inform you about certain information concerning sentencing.

In determining your sentence, the Court must calculate the applicable advisory sentencing guideline range and consider that range. Although the United States Sentencing Guidelines are no longer mandatory due to a case called United States versus Booker, the Court must still consider those guidelines as well as all relevant statutory factors in determining your sentence.

In addition, the Court must consider possible departures under the sentencing guidelines and consider other sentencing factors under Title 18, United States Code, Section 3553(a). Of course, the Court also will consider any motion or memorandum filed by you or the United States, your lawyer's argument, any statement you wish to make at the appropriate time, any victim allocution if one appears in your case, and the arguments of the Assistant United States Attorney.

Please understand that your lawyer's calculation of an advisory guideline range is only an

estimate and that the Court will determine the advisory guideline range applicable to your case at the sentencing hearing. In addition, the Court has the legal authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the advisory guidelines range. The Court can do so via a departure under the guidelines or a variance under the statute.

It's important that you understand that it's the Court that will determine your actual sentence. Your actual sentence may be different from any estimate your lawyer or anyone else may have given you. If you enter a plea of guilty and the Court accepts that plea, then the Court has the legal authority to sentence you to the maximum sentence on each count permitted by law. I'll discuss the maximum possible sentence with you in a minute. If the Court imposed such a maximum sentence, you would not be allowed to withdraw your guilty plea.

At the sentencing hearing, after the Court has considered all arguments, information, the advisory guideline range, and all relevant sentencing factors under federal law, I'll announce your sentence in open court. That's our process.

Mr. McMillan, I must ask you some questions now, so please stand.

Do you have any questions about your rights to a jury trial, the consequences of pleading guilty, or the process that will occur between now and sentencing which I've just described to you?

THE DEFENDANT: No, sir.

THE COURT: Have you received a copy of the indictment? That is the written charge against you in this case.

THE DEFENDANT: Yes, sir.

THE COURT: Have you had an adequate opportunity to discuss the indictment and your case with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had all the conversations with him that you need?

THE DEFENDANT: Yes, sir.

THE COURT: Are you fully satisfied with your lawyer's legal services in your case?

THE DEFENDANT: Yes, sir.

THE COURT: As for the charges, the Court advises you as follows.

In count 1 of the indictment, the grand jury charges that on or about January 19th, 2017, in the Eastern District of North Carolina, the defendant, Brandon McMillan, knowing he had previously been

convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition, and the firearm and ammunition were in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

Mr. McMillan, do you understand the charge?

THE DEFENDANT: Yes, sir.

THE COURT: The Court advises you as follows as to maximum possible penalty as to this charge.

Penalties for this particular charge vary depending on your personal criminal history. They're different for somebody who's an armed career criminal or not an armed career criminal. If you're not an armed career criminal, which is the ordinary case, then the maximum penalty is not more than ten years imprisonment, a fine not to exceed $250,000, or both such fine and imprisonment; not more than three years on supervised release; not more than two years of imprisonment upon revocation of supervised release; a 100-dollar special assessment; and restitution, if applicable.

If your personal criminal history is such that you would be found to be an armed career criminal, then the penalties increase. At that point it becomes not less than 15 years imprisonment nor more than life, a fine not to exceed $250,000, or both such fine and

imprisonment; not more than five years on supervised release; not more than five years of imprisonment upon revocation of supervised release; a 100-dollar special assessment; and restitution, if applicable.

The Court also advises you that the Court has the authority to order forfeiture or restitution for someone convicted of this crime, and the United States has given you notice that it intends to seek forfeiture of any and all firearms or ammunition that were involved in or used in a knowing commission of the offense, and that specifically they intend to seek a Colt, model New Agent Series 90, .45 caliber pistol, bearing serial number GT01883, and any associated ammunition.

The Court also advises you that you'll have to pay a 100-dollar special assessment as to each felony count to which you plead guilty.

In addition, the Court advises you as follows concerning your plea agreement. Your plea agreement was negotiated between you and your counsel and counsel for the United States, so the agreement is between you and the United States. The Court's not a party to the plea agreement. Also, the Court's not bound by any sentencing recommendations or stipulations in the plea agreement. They are extremely persuasive.

I also advise you that the Court is

obligated to examine carefully any plea agreement to be sure that the agreement conforms with the objectives of sentencing, including imposing a sentence within the parameters of your statute of conviction, your offense level, and past criminal conduct, if any. The Court will not be able to evaluate your offense level and your past criminal conduct until after it receives a detailed presentence report from the probation office. As discussed, the probation officer will prepare that report between now and your sentencing date.

I have in front of me a Memorandum of Plea Agreement in the case of United States of America versus Brandon McMillan. It's signed on page 7 by Mr. Hulbig for the United States, by Mr. Ludlum as counsel for the defendant. It bears a signature above your name. Did you sign this, Mr. McMillan?

THE DEFENDANT: Yes, sir.

THE COURT: Did you read and discuss the entire plea agreement with your lawyer before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Does this written plea agreement constitute in its entirety the whole agreement that you have with the United States about your case?

THE DEFENDANT: Yes, sir.

THE COURT:  Do you understand each term of the plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  I need to specifically discuss with you the appellate rights waiver in the agreement. It's paragraph 2(c) on page 1.  In it, you agree to waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground, including any appeal pursuant to Title 18, United States Code, Section 3742, and further, to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to you at the time of your guilty plea.  The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Do you understand the appellate and other rights you're waiving in paragraph 2(c)?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand the essential elements of the offense to which you're pleading guilty? Those were outlined in paragraph 3(a).

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand the United States would be required to prove each of these elements beyond a reasonable doubt had this matter proceeded to trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  The parties have also made some stipulations regarding the applicable provisions of the sentencing guidelines in paragraph 5:

That the maximum downward adjustment for acceptance of responsibility is warranted, and states the parties further stipulate that any sentence imposed will run concurrently to the underlying state conduct in docket numbers 17CR050651 through 17CR050656, forming the basis for the indictment.

Do you understand this agreement is persuasive but not binding on the Court in its application of the advisory guideline range at sentencing?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. McMillan, other than the plea agreement and the terms that are contained in it, has anyone made any promise to you or anyone else that caused you to decide to plead guilty?

THE DEFENDANT:  No, sir.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you or anyone else and thereby caused you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that the charge to which you intend to plead guilty is a felony, and that if your guilty plea is accepted, you will be found guilty of that charge?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that right now, at this very moment, you still have the legal right to plead not guilty to every charge brought against you?

THE DEFENDANT: Yes, sir.

THE COURT: You also understand if you plead not guilty, you would enjoy all of the trial-related rights and the appeal rights that I've described to you?

THE DEFENDANT: Yes, sir.

THE COURT: You also understand if you enter a plea of guilty and I accept it, there will not be a trial? Instead, you will have waived or given up your right to a trial as well as all of the trial-related rights that I've just described to you. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. McMillan, other than the plea agreement and the terms that are contained in it, has anyone made any promise to you as to what your actual sentence will be?

THE DEFENDANT: No, sir.

THE COURT: Have you answered all of my questions truthfully today?

THE DEFENDANT: Yes, sir.

THE COURT: I'm now gonna read the charge and ask you how you plead.

In the indictment, the grand jury charges in count 1 that on or about January 19th, 2017, in the Eastern District of North Carolina, the defendant, Brandon McMillan, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition, and the firearm and ammunition were in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

How do you now plead to count 1?

THE DEFENDANT: Guilty.

THE COURT: Did you do it?

THE DEFENDANT: Yes, sir.

THE COURT: Then you now admit that you are,

in fact, guilty as charged in count 1?

THE DEFENDANT: Yes, sir.

THE COURT: You may have a seat.

Mr. Hulbig, please make a proffer or put on evidence concerning the facts the United States would be prepared to prove at trial so the Court may determine whether there's an independent factual basis for the plea.

MR. HULBIG: Thank you, Your Honor. If this case had gone to trial, the government would have proven by competent evidence beyond a reasonable doubt the following:

That on January 18th, 2017, Lucius Locklear, Shaun McMillan, and Lisa Locklear discussed committing a robbery against Donald Preston Chavis, as Chavis was a well-known drug dealer.

On January 19th, 2017, the defendant and Kenneth Oxendine were brought into this plan. The group decided that Lisa Locklear would contact Chavis and place an order for $15 of crack cocaine. She was to notify the rest of the group upon Chavis's arrival, and then Lisa Locklear would direct Chavis to drive down her road on Tucker Drive in Robeson County.

When Chavis arrived, the McMillans, Lucius Locklear, and Kenneth Oxendine approached Chavis's car

with weapons. As they approached, the driver of Chavis's vehicle tried to speed away. The defendant, using a 5.56 caliber rifle, fired multiple shots into the car's engine block. Shaun McMillan, using a handgun, shot into the passenger side window where Mr. Chavis was sitting and shot Chavis in the head. The suspects removed Chavis's chains, money, as well as Chavis's gun.

The driver of Mr. Chavis's vehicle, Brian McNeill, and the other passenger escaped the car during the shooting and ran into the woods. The driver later stated that the suspects left in a van, and several neighbors observed the van leaving as well.

Multiple casings were recovered at the scene of the shooting including 5.56 caliber ammo in addition to .45 caliber handgun, Colt model New Agent Series 90, bearing serial number GT01883, was recovered from a nearby property. The property owner was interviewed and indicated that he did not own that firearm.

Through interviews, law enforcement spoke with Mr. Oxendine in a noncustodial setting. During that interview, Mr. Oxendine advised that on the day of the murder, the defendant, Shaun McMillan, and Lucius Locklear picked him up in Shaun's minivan. They then proceeded to Lisa Locklear's residence. They all had

firearms, and the defendant provided him, meaning Mr. Oxendine, with a .45 caliber pistol. They believed that Chavis would have half a kilo of cocaine and $70,000 in the vehicle and planned to rob him.

They waited in the tree line for Chavis to make the delivery of crack cocaine to Lisa Locklear. As Chavis's vehicle attempted to exit by the dirt road, they jumped out and approached the vehicle. The driver of the vehicle rushed the engine, and the defendant shot into the engine block twice, disabling the vehicle. Mr. Oxendine further stated he took off running after he observed Chavis had been shot.

Shaun McMillan and Lucius Locklear later picked him up in the van as he was walking in the road.

Mr. Oxendine identified the .45 caliber firearm recovered from the neighboring property as the gun that the defendant gave him before the robbery.

After the defendant was arrested in pretrial custody, he asked to speak to officers on January 19th, 2018. The defendant waived his Fifth Amendment rights and discussed his involvement in the robbery. He admitted that he and others discussed the robbery the night before the events. Lucius -- he advised that Lucius Locklear told the defendant that he had set the robbery up through Lisa Locklear and that they all had

guns that night and they picked them up from an individual named Matt. The defendant further admitted to shooting into the engine block of the car. He admitted that money and jewelry was taken from Mr. Chavis and that Shaun McMillan shot Mr. Chavis.

An ATF firearms nexus expert reviewed the recovered firearm and 5.56 caliber shell casing recovered from the shooting. The ATF nexus expert advised the shell casing -- firearm were not manufactured in North Carolina, and thereby must have traveled and affected interstate commerce prior to the defendant possessing them.

Prior to the date in question as alleged in the indictment, which was January 19th, 2017, the defendant was convicted of manslaughter and firearm by felon and received a sentence of over ten years in prison, thereby becoming aware of his status as a convicted felon. He was also on parole at the time he committed the offense.

Your Honor, that's just some of the evidence the government would have presented at trial if the case proceeded.

THE COURT: I just want to be sure, Mr. Hulbig, the conviction for manslaughter that is the underlying basis for the felon in possession charge

occurred, and he was out on --

MR. HULBIG: Yes.

THE COURT: He was out on probation -- I'm sorry -- on parole on that charge?

MR. HULBIG: That's my understanding.

THE COURT: Okay. Thank you.

MR. HULBIG: Yes, Your Honor.

THE COURT: All right. Mr. McMillan, do you disagree with any of the facts just presented by the Assistant United States Attorney?

THE DEFENDANT: No, sir.

THE COURT: In light of the plea of guilty and the United States' proffer, the Court finds that the plea is supported by an independent basis in fact as to each of the essential elements of the offense. The Court also finds that the defendant's fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges, the maximum penalties, the mandatory minimum sentence, if any, his rights, and the consequences of pleading guilty. The Court also finds that the defendant's plea of guilty is knowing and voluntary. The plea is, therefore, accepted, and the defendant is now adjudged guilty of the charge in count 1 of the indictment.

Mr. Ludlum, do you wish to be heard today on

detention?

MR. LUDLUM: No, sir, Your Honor.

THE COURT: Defendant having been adjudicated guilty, he's remanded to the custody of the United States Marshal. Mr. McMillan, good luck to you, sir.

(Proceedings concluded at 10:58 a.m.)

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Risa A. Kramer                               6/28/2023

Risa A. Kramer, RMR, CRR                        Date